UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STEVEN SIDBURY, A/K/A JOHN DOE,

           Plaintiff,

  - against -

THE CITY OF NEW YORK, *et al.*,

           Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CV-4761 (RRM) (RER)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff Steven Sidbury, also known as John Doe, brought this civil rights action against the City of New York (the "City") and New York City Department of Correction ("DOC") employees alleging federal constitutional and New York State law violations arising from two similar incidents, which occurred while he was incarcerated at Otis Bantum Correctional Center at Rikers Island. Before the Court is the City's unopposed motion for partial summary judgment on Sidbury's sixth cause of action for municipal liability against the City. For the reasons set forth below, the City's motion is GRANTED.

## BACKGROUND

Sidbury, an inmate at Rikers Island, filed the original complaint in this action on August 14, 2015 against the City of New York, Correction Officer Grinnage, Captain Payne, and Correction Officer John Does 1-15. (Complaint ("Compl.") (Doc. No. 1).) The following material facts are taken from defendants' Local Rule 56.1 statement. *See* Local Rule 56.1(d); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party [to a motion for summary judgment] then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") As previously noted, Sidbury did not respond or file any opposition to defendants' motion.

On November 11, 2014, in an attempt to conduct a search of Sidbury's cell, New York City Department of Correction ("DOC") officers asked Sidbury to exit his cell. (Defendants' Rule 56.1 Statement ("Defs.' SOF") (Doc. No. 65) ¶¶ 3–4.) Sidbury refused to do so. (Defs.' SOF ¶ 5.) Mental health professionals tried to persuade Sidbury to comply with the search and leave his cell but Sidbury refused. (*Id.* ¶¶ 7–9.) Sidbury "was extracted from his cell after refusing to come out." (*Id.* ¶ 6.)

On February 20, 2015, DOC officers again attempted to search of Sidbury's cell. (*Id.* ¶ 11.) Sidbury refused to leave his cell to allow the search. (*Id.* ¶¶ 12–13.) After refusing to leave, a mental health professional came to speak with him but Sidbury still would not leave his cell. (*Id.* ¶¶ 15–16.) Sidbury again was "extracted from his cell." (*Id.* ¶ 14.)

On April 19, 2016, Sidbury filed an amended complaint naming additional DOC officers as defendants. The amended complaint alleges six causes of action: (1) assault and battery in violation of New York State law against all defendant, (2) § 1983 excessive force claim against all defendants, (3) § 1983 substantive due process claim against all defendants, (4) § 1983 cruel and unusual punishment claim against all defendants, (5) respondeat superior claim against the City, and (6) a *Monell* claim against the City.[1] (Amended Complaint ("Am. Compl.") (Doc. No. 13).) The amended complaint details two incidents between Sidbury and the defendants, on November 11, 2014, and another that occurred on February 20, 2015, in which correction officers at Otis Bantum Correction Center allegedly assaulted Sidbury. (Am. Compl. ¶¶ 58–72.)

On August 11, 2017, Sidbury consented to the dismissal of his state law claims. (Sidbury's Opposition to Defendants' Request for a Pre-motion Conference ("Sidbury PMC Opp.") (Doc. No. 46).) On March 18, 2019, the parties stipulated that all claims against Officers

---

[1] Sidbury's fourth cause of action, a § 1983 claim for cruel and unusual punishment, is likely duplicative of Sidbury's second cause of action, a § 1983 claim for use of excessive force.

Hyppolite and Kenny, Assistant Deputy Warden Patterson, Deputy Warden Croskey, and Captain Payne be dismissed with prejudice. (Stipulation of Dismissal, May 1, 2019 (Doc. No. 56).) On May 16, 2019, the Court so ordered the parties' stipulation and dismissed with prejudice defendants Hyppolite, Kenny, Patterson, Croskey, and Payne. (Order, May 16, 2019 (Doc. No. 58).)

The City now moves for summary judgment on Sidbury's sixth cause of action for municipal liability against the City, his *Monell* claim, arguing that Sidbury has not adduced any evidence to establish municipal liability. (Defendants Motion for Summary Judgment ("Defs.' Mot.") (Doc. No. 62).) The City timely served its motion on May 31, 2019. (DeCastro Letter (Doc. No. 60).) On July 18, 2019, counsel for Sidbury advised the Court that Sidbury "will not oppose the defendants' motion for summary judgment." (July 18, 2019, Rameau Letter ("Rameau Letter") (Doc. No. 61).) Accordingly, the Court deems the City's motion for summary judgment unopposed.

The City asserts that both of Sidbury's theories of municipal liability fail as a matter of law because, among other reasons, Sidbury has failed to provide evidence of a City policy or practice, as is necessary to support a § 1983 claim against the City. (Defendants Memorandum of Law in Support of Their Motion for Partial Summary Judgment ("Defs.' Mem.") (Doc. No. 63).) The City argues that Sidbury's reliance on an investigatory report and civil lawsuits is insufficient to support a claim for municipal liability based on a municipal custom or practice. (*Id.* at 6–9.) The City further argues that the DOC's alleged omission, failure to videotape interactions between inmates and mental health professionals, is insufficient to support a claim for municipal liability based on a failure to train because Sidbury has not presented any evidence that the alleged omission caused a constitutional violation. (*Id.* at 9–12.)

3

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 allows a party to seek a judgment before trial on the grounds that all facts relevant to a claim or defense are undisputed and that those facts entitle the party to the judgment as a matter of law. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (citing *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). The movant "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *SS Grocery, Inc. v. U.S. Dep't of Agric., Food & Nutrition Serv.*, 340 F. Supp. 3d 172, 179 (E.D.N.Y. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330–31 (1986)). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988). In such cases, a defendant is entitled to summary judgment if the plaintiff has "'failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim on which the plaintiff[] bear[s] the burden of proof." *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)). Examples of admissible evidence include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c).

A non-moving party's failure to respond to a summary judgment motion does not entitle the moving party to default judgment. *See Jackson*, 766 F.3d at 194 (citing *Vermont Teddy Bear Co.*, 373 F.3d at 244). Rather, the district court is obligated to determine if the movant has met

his burden of demonstrating that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. *See Vermont Teddy Bear Co.*, 373 F.3d at 244. In making this determination, the district court "may rely on other evidence in the record even if uncited." *Jackson*, 766 F.3d at 194 (citing FED. R. CIV. P. 56(c)). In the instant case, Sidbury confirmed in a letter to the Court that he would not oppose Defendants' motion. (Rameau Letter.) Sidbury did not submit a "statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." (Local Rule 56.1(b).) Thus, "the court evaluates whether the undisputed facts offered by defendants demonstrate that they are entitled to judgment as a matter of law." *Boda v. Phelan*, No. 11-CV-00028 (KAM), 2014 WL 3756300 at *4 (E.D.N.Y. July 30, 2014).

## DISCUSSION

The City seeks summary judgment on Sidbury's claim alleging liability of the City as a municipality under 42 U.S.C. § 1983 for actions taken by DOC officers pursuant to a City policy or practice. To maintain a § 1983 action, "a plaintiff must establish two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Sinacore v. Dep't of Corr. Servs., State of N.Y.*, 104 F.3d 354 (2d Cir. 1996). When the § 1983 claim is brought against a municipality, the plaintiff must also establish that "the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and

widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff." *Moran v. Cnty. of Suffolk*, No. 11-CV-3704 (PKC) (GRB), 2015 WL 1321685, at *9 (E.D.N.Y. Mar. 24, 2015). The purpose of this requirement is to ensure that "a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997).

The City argues that it is entitled to summary judgment on Sidbury's § 1983 municipal liability claim because the City has met its burden and Sidbury has failed to present evidence sufficient for a reasonable juror to conclude that the City had a policy or practice of engaging in the conduct he alleges. *See Goenaga*, 51 F.3d at 18. Though Sidbury has not adduced evidence in opposition to the City's motion for partial summary judgment, Sidbury's complaint seems to advance two theories of municipality liability: (1) that the DOC has a history of excessive use of force and that the tolerance of this amounts to a municipality custom or practice that led to Sidbury's alleged injuries in violation of his constitutional rights, and (2) the City's failure to properly train and supervise its employees on interacting inmates with mental health problems rises to the level of deliberate indifference, in violation of Sidbury's constitutional rights. The evidence that Sidbury provides to support his two theories of liability is insufficient and therefore the City is entitled to summary judgment.

## I. Custom or Practice

Sidbury's complaint references two pieces of evidence in support of his first theory of liability, neither of which can sustain his claim. First, Sidbury references a 2014 report by the

6

United States Attorney's Office for the Southern District of New York of an investigation into the treatment of adolescent male inmates between the ages of 16 and 18 at jails on Rikers Island ("DOJ Report"). The DOJ Report was provided by counsel for defendants. (Ex. H to DeCastro Declaration ("DeCastro Decl.") (Doc. No. 64-6).) The DOJ Report is insufficient evidence that a municipal policy or custom caused the actions that Sidbury alleged injured him. The DOJ Report focused on incidents involving inmates between the ages of 16 and 18 and primarily focused on conduct between 2011 and 2013. (*Id.* at 1–2.) On summary judgment, this evidence is too attenuated to establish a causal relationship between Sidbury's allegations regarding conduct in November of 2014 and February of 2015, while he was 22 years old.[2] *See Zander v. City of New York*, No. 17-CV-611 (ER), 2019 WL 1409440, at *6 (S.D.N.Y. Mar. 28, 2019) (finding causal relationship between same DOJ Report and Rikers' inmates excessive force allegations from 2013 and 2015 incidents too attenuated and dismissing *Monell* claim on summary judgment).

Second, Sidbury's complaint lists settlements involving lawsuits with excessive force allegations as evidence of a custom or practice that led to Sidbury's injuries but Sidbury has not adduced any evidence in opposition to the instant motion. (Am. Compl. ¶ 50.) This list does not save Sidbury's claim. The fact that complaints alleging excessive use of force have been filed by inmates at various detention centers across Rikers Island, over a span of ten years, none resulting in a finding of liability, does not support the frequency or pervasiveness of a custom required to defeat a summary judgment motion on a *Monell* claim. *See Walker v. City of New York*, No. 12-

---

[2] This Court takes judicial notice of the New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Lookup System results for Sidbury. *See Shannon v. Venettozzi*, 749 F. App'x 10, 13 (2d Cir. 2018) (taking judicial notice of DOCC search result); *Brown v. Doe*, No. 13-CV-8409 (ER), 2014 WL 5461815, at *1 (S.D.N.Y. Oct. 28, 2014) (same). According to DOCCS, Sidbury was born on July 3, 1992 and therefore he would have been 22 years old during both incidents alleged in his complaint. DOCCS Inmate Population Information Search ("N.Y. Inmate Lookup"), http://nysdoccslookup.doccs.ny.gov (last visited Feb. 20, 2020).

7

CV-5902 (PAC), 2014 WL 1259618, at *1, 3 (S.D.N.Y. Mar. 18, 2014) (finding "ten similar complaints [] filed against the City over the last decade," none of which resulted in an adjudication of liability, to be "paltry" and "spread over a period so long in a city so large" and therefore "hardly" suggestive of "the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim"); *Merriweather v. City of New York*, No. 12-CV-5258 (KPF), 2015 WL 57399, at *14 (S.D.N.Y. Jan. 5, 2015) (concluding "list of cases . . . which are [] civil rights actions the City purportedly settled with other plaintiffs" is not "evidence of a policy or custom" and such a "conclusory allegation that cannot survive summary judgment without more").

## II.     Failure to Train

Sidbury's second theory of municipal liability is that the City failed to properly train its employees regarding inmates with mental health problems. (Am. Compl. ¶¶ 108–110.) "[A] claim of inadequate training will trigger municipal liability only where the failure to train amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (internal citations and quotations omitted). A municipal liability claim based on failure to train can only be the basis of liability "if the municipality's deficient conduct was the cause of plaintiff's injury." *Smith v. City of New York*, No. 03-CV-7576 (NRB), 2005 WL 1026551, at *9 (S.D.N.Y. May 3, 2005). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Sidbury alleges that the City's failure to train defendants to videotape interactions between mental health professionals and inmates resulted in two instances where he was injured while being extracted from his cell. (Sidbury PMC Opp. at 2.) Sidbury points to Captain

Lomas's deposition testimony confirming that DOC employees are not trained to videotape such interactions. (Lomas Deposition, Ex. C to DeCastro Decl. (Doc. No. 64-3) at 68:14–23.) Sidbury has presented no evidence to support any causal connection between the lack of video recording of the mental health professional's conversation with Sidbury prior to his extraction from his cell and his alleged injury. Accordingly, the City is entitled to summary judgment on Sidbury's municipal liability claim based on an alleged failure to train.

## CONCLUSION

For the reasons stated above, the City's partial motion for summary judgment is GRANTED IN PART. Sidbury's sixth cause of action, a § 1983 *Monell* claim against the City, is dismissed.

The following claims remain: (1) assault and battery in violation of New York State law against all defendant, (2) § 1983 excessive force claim against all defendants, (3) § 1983 substantive due process claim against all defendants, (4) § 1983 cruel and unusual punishment claim against all defendants, and (5) respondeat superior claim against the City.

SO ORDERED.

Dated: Brooklyn, New York
      May 21, 2020

*Roslynn R. Mauskopf*

————————————————
ROSLYNN R. MAUSKOPF
United States District Judge

9